[No. 2259.]

THE COLORADO DRY GOODS COMPANY v. W. P. DUNN COMPANY.

1. **Appellate Practice—Findings of Trial Court—Written Evidence.**

The rule that the appellate court is concluded by the find-

ing of the trial court on conflicting evidence does not apply where the evidence is in writing.

**2.  Sales—Warranties—Evidence—Burden of Proof.**

In an action for the price of goods purchased by a written contract or order where defendant answered that the goods were purchased upon certain representations and warranties which were not true, and the written evidence of the contract discloses no such representations or warranties, the burden is upon the defendant to prove them.

**3.  Same.**

Plaintiff sold to defendant for advertising purposes a number of copies of a picture beneath which was printed "The War Congress of the United States of America." It contained the portraits of all the members of the house of representatives elected at the general election to that congress. Six of these members had died before the war resolutions were passed. It was not shown whether or not their successors had been elected prior to the passage of the resolution. None of these successors were included in the picture. Held, that there was no breach of warranty that the picture contained all the members of the house at the time war was declared.

*Appeal from the District Court of Arapahoe County.*

Mr. I. N. STEVENS and Mr. FREDERICK W. LIENAU, for appellant.

Mr. HARRIE M. HUMPHREYS, for appellee.

THOMSON, J.

The Manhattan Novelty Company was the publisher of an engraving beneath which was printed, "The War Congress of the United States of America." The engraving contained the portraits of three hundred and seventy individuals, and designated them as "Members of House of Representatives, Fifty-Fifth Congress." Connected with this designation were the words, "They *Remembered the Maine*," and a list of names, purporting to be the names of those members, arranged with reference to the states and districts represented by them. On the 24th day of October, 1898, S. Rosenfield, as

agent for the novelty company, exhibited a copy of this engraving to L. Ransohoff, the manager of The Colorado Dry Goods Company who, after an inspection of it, in behalf of the dry goods company made and delivered to Rosenfield an order of which the following is a copy:

"The Colorado Dry Goods Company,

"Denver, Colo., Oct. 24, 1898.

"Manhattan Novelty Company,

"335 and 336 Manhattan Building,

"Chicago, Ill.

"Gentlemen: We hereby order from you five thousand (5,000) copies of your War Congress Pictures at four and three-quarters (4¾) cents per copy, for which we agree to pay the total sum of two hundred and thirty-seven dollars and fifty cents ($237.50) within fifteen (15) days from date of shipment, less two per cent. (2 per cent.) off. This order is in consideration of the express terms and agreement made by your representative, S. Rosenfield, that he or any salesman of your firm will not sell any of these War Congress Pictures, purchased by us, to any other merchant or dealer, or agent, in this City of Denver, Colorado, or within twenty-five (25) miles around, for one (1) year from date. You are also to furnish us any more copies we may desire to order, at the same price as above mentioned, with the privilege of ordering in lots of one thousand (1,000) at one time; and also to print on every picture the following name: 'Compliments of The Colorado Dry Goods Company, Denver,' to be delivered by November 15, 1898.

"Order given by The Colorado Dry Goods Co., per L. Ransohoff, Manager.

"Order taken by S. Rosenfield, Agent, for Manhattan Novelty Company, Chicago, Ill."

On the 4th day of November, 1898, the novelty

company sold and assigned the contract to W. P. Dunn & Co., a corporation, which, on November 15, 1898, delivered to the dry goods company five thousand copies of the engraving, pursuant to the terms of the order; but the latter, after having received them, refused to pay for them.

This suit was brought by W. P. Dunn & Co. to recover the agreed price. The defendant answered that it purchased the pictures to be distributed to its patrons free of charge along with their purchases, the free distribution to be offered as an inducement to the public to deal with it; that the order was given on the representation and warranty of the novelty company that the portraits in the engraving represented all the members of the war congress, that is, all the members of the house of representatives of the fifty-fifth congress of the United States, which was in session immediately previous to and pending the recent war between the United States and the Kingdom of Spain, and which passed the war resolutions of the 21st day of April, 1898; that the picture was not what it purported to be, and did not contain the portraits of the members of the war congress; and that, upon the discovery of such fact by some of the defendant's customers, it withdrew the engravings from distribution and notified the novelty company and the plaintiff that it held the engravings subject to their order. The replication put in issue the allegations of the answer concerning representation and warranty.

The case was heard upon an agreed statement of facts, and the affidavits of Mr. Rosenfield, the novelty company's agent, and Mr. Ransohoff, the manager of the defendant; the affidavits being received in lieu of the testimony of those persons. The only portion of the statement of which notice is necessary here was that the picture contained the por-

traits of six members who were elected to the fifty-fifth congress, but who had died before the passage of the war resolutions, and did not contain the portraits of their successors. The affidavit of Ransohoff affirmed, and that of Rosenfield denied, the representations and warranty alleged in the answer. The cause was heard by the court, which gave its judgment to the plaintiff, and the defendant appealed.

For the plaintiff it is said that as the evidence was contradictory, the finding upon it below concludes this court. Such is the rule where the witnesses are personally present and testify at the trial; but there is no such rule where the evidence is in writing.—*Stuart v. Asher,* 15 Colo. App. 403.

In the written evidence of the contract between the defendant and the novelty company we find neither representation nor warranty. It consists simply of an order for the pictures and the acceptance of the order. Whatever representation there was must have been verbal; and, having been alleged as matter of defense, the burden was on the defendant to prove it. But the evidence for and against the allegation was evenly balanced. One affidavit affirmed it and the other denied it; so that it was left as if there had been no proof at all respecting it.

It is argued, however, that on its face the engraving purports to exhibit the portraits of all the members of the House at the time war was declared. The engraving is styled "The War Congress of the United States of America," and it is said that if it includes persons who were not members when the war resolutions were adopted and omits others who were, it is not a representation of the war congress of the United States. But it is entirely consistent with the agreed statement that every man who was a member of the house of representatives at or im-

mediately previous to the commencement of the war with Spain is represented in the picture. Six members had previously died and, of necessity, they were not present when the war resolutions were passed. No dates connected with their death are given, and it is not said that their places had been filled. The statement that the picture did not contain the portraits of their successors is not a statement, nor equivalent to a statement, that they had successors. The fifty-fifth congress was elected in 1896, and the terms of its members would expire on March 4, 1899. There could be no regular election of their successors until the fall of 1898, a considerable period after the passage of the war resolutions. If the time of their death was not too recent it is possible the vacancies might have been filled by special election before the passage of the resolutions. But it is nowhere said that the vacancies had been filled; and, unless they had, the picture contained the portraits of all the members of the war congress, and the representation was strictly true. That it contained also the portraits of members of the fifty-fifth congress who had previously died and who, consequently, did not participate in the passage of the resolutions, in no manner affected the character of the representation. We find no valid reason for disturbing the judgment, and it will be affirmed.

*Affirmed.*